# JS-6

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

SOUTHERN DIVISION

| | |
|---|---|
| KELLY DAVIS, <br><br> Plaintiff, <br><br> v. <br><br> HOAG MEMORIAL HOSPITAL PRESBYTERIAN, <br><br> Defendant. | Case No.: SACV 23-00772-CJC (ADSx) <br><br> ORDER GRANTING PLAINTIFF'S MOTION TO REMAND [Dkt. 18] |

## I. INTRODUCTION

In this putative class action, Plaintiff Kelly Davis alleges that Defendant Hoag Memorial Hospital Presbyterian ("Hoag") conspires with Facebook to intercept communications containing personally identifiable information, protected health information, and related confidential information.  (Dkt. 1-1 [Complaint, hereinafter "Compl."] ¶¶ 2, 10.)  Hoag removed the case to this Court under the federal officer removal statute, 28 U.S.C. § 1442(a)(1).  (Dkt. 1 [Notice of Removal, hereinafter

"NOR"] ¶ 10.)  When removing the case, Hoag noted that it is related to another case before this Court, *Doe v. Hoag Memorial Hospital Presbyterian*, Case No. SACV 23-04444-CJC (ADSx) ("*Doe*"), in which Hoag made the same arguments regarding applicability of the federal officer removal statute under similar circumstances.  (Dkt. 2.)  The day before Hoag removed this case, the Court granted a motion to remand in *Doe*, explaining that the federal officer removal statute did not apply.  *Doe v. Hoag Mem'l Presbyterian Hosp.*, 2023 WL 3197716, at *3 (C.D. Cal. May 2, 2023).  Now before the Court is Plaintiff's motion to remand this case.  (Dkt. 18 [Notice of Motion and Motion to Remand, hereinafter "Mot."].)  For the same reasons the Court granted the motion to remand in *Doe*, Plaintiff's motion to remand this case is **GRANTED**.[1]

## II.   BACKGROUND

Hoag uses a Facebook (or Meta) tool called Facebook Pixel as a component of its "website analytics practices" to "drive patients to the Hoag websites and to the patient portal."  (NOR ¶¶ 7, 45.)  It asserts that the federal government, through the "Meaningful Use" program, has "incentivized and directed providers who participate in the Medicare and Medicaid program (like Hoag) to offer patients online access to their medical records, and to optimize patient engagement with their medical information."  (*Id.* ¶ 12; *see also id.* ¶ 23 [citing 42 C.F.R. §§ 495.2(f)(12)(i)(B)].)  As part of that program, the federal government gives incentive payments to healthcare providers who promote patient engagement through the "meaningful use of certified [electronic health record] technology."  42 U.S.C. §§ 1395w-4(o), 1395ww(n); *see also* 42 C.F.R. §§ 495.20–495.24; (NOR ¶¶ 20–21).  The federal government also provided guidance about how private providers could optimize their online health portals and offered a model for

---

[1] Having read and considered the papers presented by the parties, the Court finds this matter appropriate for disposition without a hearing.  *See* Fed. R. Civ. P. 78; Local Rule 7-15.  Accordingly, the hearing set for July 10, 2023, at 1:30 p.m. is hereby vacated and off calendar.

providers to follow that used third-party marketers like Facebook and Google to increase engagement. (*See* NOR ¶ 30.)

Plaintiff alleges that "[t]hrough the Facebook Pixel, Hoag shares its patients' identities and online activity, including information and search results related to their private medical treatment." (Compl. ¶ 31.) She asserts that "[w]henever patients search their treatment or condition, or whenever patients schedule an appointment, [Hoag] procures Facebook to intercept communications that contain protected health information." (*Id.* ¶ 34.) "Each time [Hoag] sends this activity data, it also discloses a patient's personally identifiable information, including their Facebook ID ('FID')," which "is a unique and persistent identifier that Facebook assigns to each user." (*Id.* ¶ 35.) Although Plaintiff never consented to Hoag disclosing her personally identifiable information and protected health information, it "nonetheless knowingly disclosed Plaintiff's protected health information to Facebook." (*Id.* ¶ 42.)

## III. LEGAL STANDARD

"Federal courts are courts of limited jurisdiction," possessing "only that power authorized by Constitution and statute." *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (internal quotations omitted). A suit filed in state court may be removed to federal court if the federal court would have had original jurisdiction over the suit. *See* 28 U.S.C. § 1441(a). A removed case must be remanded to state court if the federal court lacks subject matter jurisdiction. *See id.* § 1447(c). "The burden of establishing federal jurisdiction is on the party seeking removal, and the removal statute is strictly construed against removal jurisdiction." *Prize Frize, Inc. v. Matrix (U.S.) Inc.*, 167 F.3d 1261, 1265 (9th Cir. 1999). Accordingly, "[f]ederal jurisdiction must be rejected if there is any doubt as to the right of removal in the first instance." *Gaus v. Miles, Inc.*, 980 F.2d 564, 566 (9th Cir. 1992).

A defendant may remove to federal court a case brought against the "United States or any agency thereof or any officer (or any person acting under that officer) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office." 28 U.S.C. § 1442(a)(1); *see Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142, 145 (2007). Federal officer removal is available if "(a) [the removing party] is a 'person' within the meaning of the statute; (b) there is a causal nexus between its actions, taken pursuant to a federal officer's directions, and plaintiff's claims; and (c) it can assert a 'colorable federal defense.'" *Fidelitad, Inc. v. Insitu, Inc.*, 904 F.3d 1095, 1099 (9th Cir. 2018). The statute "responds to three general concerns: (1) State-court proceedings may reflect local prejudice against unpopular federal laws or federal officials; (2) States hostile to the Federal Government may impede federal law; and (3) States may deprive federal officials of a federal forum in which to assert federal immunity defenses." *Fidelitad, Inc. v. Insitu, Inc.*, 904 F.3d 1095, 1099 (9th Cir. 2018) (quoting *Watson*, 551 U.S. at 150) (cleaned up). Section 1442 is liberally construed to address these issues but is not limitless in scope. *See id.* (citing *Watson*, 551 U.S. at 147); *see also Geisse v. Bayer HealthCare Pharms. Inc.*, 2019 WL 1239854, at *4 (N.D. Cal. Mar. 18, 2019).

## IV.   DISCUSSION

Hoag asserts that the federal officer removal statute applies because in helping the federal government "develop a nationwide infrastructure for health information technology," it "acted within the penumbra of federal action and office." (NOR ¶¶ 12–13.)[2] Hoag is wrong. For the statute to apply, Hoag would have to establish that while

---

[2] Hoag asks the Court to take judicial notice of various public government documents relating to the Meaningful Use program, such as the Office of the National Coordinator for Health Information Technology's 2011-2015 Federal Health Information Technology Strategic Plan. (*See* Dkt. 22 [Request for Judicial Notice].) The Court grants Hoag's request. *See Lee v. City of Los Angeles*, 250 F.3d 668, 690 (9th Cir. 2001) (noting that a court may take judicial notice of undisputed matters of public record).

"acting under" a federal officer's direction, it engaged in conduct that had a causal connection to Plaintiff's claims. *See* 28 U.S.C. § 1442(a)(1); *see also Durham v. Lockheed Martin Corp.*, 445 F.3d 1247, 1251 (9th Cir. 2006). The phrase "acting under" refers to "an effort to assist, or to help carry out, the duties or tasks of the federal superior," and describes "a relationship typically involv[ing] subjection, guidance, or control." *Watson*, 551 U.S. at 151–52. Factors relevant to assessing whether a private entity was acting under a federal officer's direction include whether the entity (1) "is acting on behalf of the officer in a manner akin to an agency relationship," (2) "is subject to the officer's close direction," (3) "is assisting the federal officer in fulfilling basic governmental tasks that the Government itself would have had to perform if it had not contracted with a private firm," and (4) is engaged in "activity [that] is so closely related to the government's implementation of its federal duties that the private person faces a significant risk of state-court prejudice, just as a government employee would in similar circumstances." *Cnty. of San Mateo v. Chevron Corp.*, 32 F.4th 733, 756–57 (9th Cir. 2022) (internal quotations and citations omitted).

Hoag has not shown that it acted under the direction of a federal officer or agency. Hoag relies on the fact that "[t]he federal government is incentivizing, regulating, monitoring, and supervising Hoag's actions in the Meaningful Use program in order to meet the federal government's national priority of interoperable health information technology." (NOR ¶ 37.) It argues that "[c]ourts within the Ninth Circuit have regularly accepted cases removed under the federal officer removal statute in circumstances where, like here, the entity 'assist[ed]' or 'help[ed] carry out' the tasks of the federal government," (Dkt. 27 [Opposition, hereinafter "Opp."] at 17). But in the cases Hoag cites in support of that proposition, (*see id.*), private parties were contracted to carry out a function that the federal government would otherwise be obligated to perform itself, such as administering Medicare benefits or administering a health benefits plan for federal employees. That is not the situation here. If hospitals did not digitize their patient

records, the federal government would be under no obligation to carry out the task itself. In other words, "[d]espite the federal government's expressed desire to encourage 'the implementation of interoperable health information technology infrastructure,' [the Meaningful Use program] neither authorizes nor obligates the federal government to create such an infrastructure itself." *Doe, I v. BJC Health Sys.*, 2023 WL 369427, at *4 (E.D. Mo. Jan. 10, 2023); *see also id.* ("[I]t cannot be said that [the defendant's] creation of a website and online patient portal fulfills a 'basic government task' that the federal government itself would otherwise be required to carry out.").

Further, mere compliance with federal regulations, "even if the regulation is highly detailed and even if the private firm's activities are highly supervised and monitored," does not fall within the scope of Section 1442(a). *Watson*, 551 U.S. at 153. Thus, while the Meaningful Use program may subject private entities like Hoag to some degree of government control, "'simply complying' with a law or regulation is not enough to 'bring a private person within the scope of the statute.'" *Saldana v. Glenhaven Healthcare LLC*, 27 F.4th 679, 684 (9th Cir. 2022) (citation omitted); *see also Jalili-Farshchi v. Aldersly*, 2021 WL 6133168, at *4 (N.D. Cal. Dec. 29, 2021).

Indeed, this Court and multiple other courts in this Circuit have rejected Hoag's arguments and held that compliance with the Meaningful Use program is insufficient to support federal officer removal. *Doe*, 2023 WL 3197716, at *3; *see, e.g.*, *Quinto v. Regents of Univ. of California*, 2023 WL 1448050, at *2 (N.D. Cal. Feb. 1, 2023) (rejecting federal officer removal when defendant argued it "use[d] the Facebook Tracking Pixel" to help the government achieve its "mission of a nationwide digitized healthcare system"); *Heard v. Torrance Mem'l Med. Ctr.*, 2023 WL 2475544, at *2 (C.D. Cal. Mar. 13, 2023) (rejecting federal officer removal when defendant argued "the federal government incentivizes, regulates, monitors, and supervises [its] actions as part of the [Meaningful Use program] 'in order to meet the government's national priority of

interoperable health information technology,' and [it] is helping the government produce the 'nationwide, interoperable information technology infrastructure for health information'" (citation omitted)); *Crouch v. Saint Agnes Med. Ctr.*, 2023 WL 3007408, at *4 (E.D. Cal. Apr. 19, 2023) (same).  Hoag argues that these cases failed to properly consider the fact that as a participant in the Meaningful Use program, it "is not merely subject to a regulatory scheme, but rather has been paid incentive benefits by the federal government to fulfill the government's own mission of developing a nationwide electronic health records system." (Opp. at 19.)  But both *Quinto* and *Crouch* considered that fact and determined that "receiving incentive payments for acting in a way that promotes a broad federal interest . . . is not the same as being contracted to carry out, or assist with, a basic governmental duty." *Quinto*, 2023 WL 1448050, at *2; *see Crouch*, 2023 WL 3007408, at *5.  The Court agrees with this reasoning.

In short, Hoag has established only that it is subject to "highly detailed" regulations and that its "activities are highly supervised and monitored." *See Watson*, 551 U.S. at 152.  That is not sufficient to invoke federal officer removal. *See, e.g.*, *Doe*, 2023 WL 3197716, at *3.

## V. CONCLUSION

For the foregoing reasons, Plaintiff's motion to remand is **GRANTED**.  This action is hereby **REMANDED** to the Superior Court of the State of California, County of Orange.

DATED:   June 23, 2023

CORMAC J. CARNEY

UNITED STATES DISTRICT JUDGE